First case on our call of the docket today, Thursday, January 13, 2011, 9 a.m. is agenda number 4109689, People v. Kenyatta White. Mr. Goldwasser. May it please the court. My name is Richard Goldwasser. I represent defendant Kenyatta White. The issue before the court this morning is whether the state had commenced adversarial proceedings against the defendant prior to the time it placed him in a lineup on February 26, 2003. The United States Supreme Court has identified five separate and distinct events that are deemed to signal the onset of judicial proceedings, of adversarial judicial proceedings. And they are a formal complaint, a preliminary hearing, an indictment, an information, or an arraignment. Under Supreme Court precedent, any five of those events signal the onset of adversarial proceedings. In the United States Supreme Court case of Rothgary v. Gillespie County, Texas, the court laid out the definition of what a formal charge is. And the issue before this court deals with whether or not the charge accusing Mr. White of first degree murder was a sufficiently formal charge signaling the onset of adversarial proceedings triggering his Sixth Amendment right to counsel. And in Rothgary, the Supreme Court stated, and I quote, an accusation filed with a judicial officer is sufficiently formal and the government's commitment to prosecute it sufficiently concrete when the accusation prompts arraignment and restrictions on the accused's liberty to facilitate the prosecution. The court- Just a couple of factual questions. When he was arrested in East St. Louis under Section 109-2 of the code, he was entitled to be arraigned before a judge there. Did he waive that right? He did not waive that right. And let me clarify that. There's no evidence in the record that he waived that right. And he was not arraigned, of course. He was not arraigned, absolutely. He was not arraigned. In fact, he was not arraigned until February 28th, eight days after his arrest. When was the first warrant issued? The warrant was issued on February 20th. Did the State's Attorney's Office give approval to the police to get the warrant? They did, Your Honor. The warrant then issued, the trial court said bonded a million dollars and eventually Mr. White was picked up in East St. Louis. But the bond was issued, the arrest warrant was issued in Cook County. Did he ever appear before a judge in East St. Louis? No. The court in Rothgerry went on to state that what counts is that the complaint filed with the magistrate accused Rothgerry of committing a particular crime and prompted the judicial officer to take legal action in response there to set the terms of bail and order the defendant locked up. In the present case, we have that exact same situation. There was a complaint filed against Mr. White that accused him of first degree murder. Pursuant to the complaint, the judge took action. The judge issued an arrest warrant ordering the defendant to be locked up and set bail. So the facts of the case fit neatly within the Rothgerry definition of a formal charge. But Mr. Goldwasser, in the Texas proceeding, was it not correct that the defendant was present before the judicial officer? That's correct. But clearly not here. Clearly not here, correct. As I previously stated, the complaint was filed and the defendant was arrested on February 20th. He was not arraigned until eight days later. Does that make a difference in terms of our analysis and our comparison to the Rothgerry case? No, it doesn't. The Supreme Court, going back to Kirby, has identified five distinct occurrences which triggered the onset. And each one of those, the defendant was present. Isn't that true? That's correct. But if the test is or the requirement is that a defendant be present in order for his Sixth Amendment rights to be triggered, then it would be unnecessary for the Supreme Court to identify the filing of a formal charge. The defendant doesn't have to be present for the filing of a formal charge. An indictment, a defendant doesn't have to be present for an indictment. And the same thing can be said with respect to an information. So the fact that the defendant wasn't present in court, hadn't been arraigned, really does not bring this case outside of the definition set forth by the Supreme Court in Rothgerry. Even though Rothgerry set out all of these things, didn't they at the end say that their holding was very narrow and that appearance before the judicial officer must occur before the right to counsel attaches? Didn't they narrow the holding by doing that? I don't think so, Your Honor. I believe they didn't narrow it to the facts. I think what the Supreme Court in Rothgerry said is they weren't going to reach the issue of whether or not an arrest by itself was sufficient to trigger the onset of Sixth Amendment rights. In fact, they specifically state in their opinion that they were not asked to do so. So I don't look at Rothgerry as being narrow to an arraignment or to the specific facts of the case. In fact, what Rothgerry actually said is, look, this has been the law. This has been the law since 1967 with Kirby v. Illinois. And the new thing about the Rothgerry decision is for the first time we have a definition, we have a standard of what a formal charge is. Rothgerry further went on to reject the notion that prosecutorial involvement was a relevant fact in considering whether or not adversarial judicial proceedings had commenced. Well, what does that mean, judicial machinery? Judicial machinery? Well, I'd like to first start out by saying what the Rothgerry court said by judicial machinery. It said it doesn't make a difference whether or not it's turned on by a police officer or a prosecutor. That's right out of Rothgerry. Judicial machinery, I think, under the Rothgerry case is you have a charge that's filed in court and you have a judicial officer take action. In this case, that's precisely what happened. We had the charge, the felony complaint against Mr. White was filed on February 20th. On February 20th, the court took action. Essentially, it found probable cause, it issued an arrest warrant, and it said bail at $1 million. Later that day, Mr. White was arrested. Restrictions were placed on his liberty. His arraignment was prompted. The facts of this case just fit precisely within what the Rothgerry definition is. Counsel, this was not raised at the trial level, is that correct? That's correct. This was not an issue. Our analysis would have to be under plein air. Correct. Correct. With respect to the plein air, I would like to get to this point now. The state in their brief makes the argument that we restricted our argument on plein air to the closely balanced evidence prong of plein air. That's simply not true. In our brief, we specifically quoted the Pietkowski case for both prongs, the closely balanced evidence prong as well as plein air affecting the integrity of the judicial process. Counsel, what do we do with the sentence in Rothgerry, a criminal defendant's initial appearance before a judicial officer where he learns the charge against him, and his liberty is subject to restriction marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel? Yeah. And I think maybe this is where the appellate court came down. They probably, I believe the court read that, is requiring an arraignment. But clearly Rothgerry identifies and repeats what has been the law of the land since 1967, that there are actually five separate events or occurrences that trigger a defendant's right to counsel, including a formal charge. Rothgerry says, look, we're not changing the law. This is how the law has been since Kirby in 1967. So I understand that statement there, but I don't read that statement as overturning 40-plus years of United States Supreme Court precedent, especially when the Rothgerry court specifically states, nothing here we are stating is new. They're saying this is how it's been. So I understand that that sentence is in the opinion, but I don't read that sentence considering the overall context of the opinion as limiting a defendant's Sixth Amendment rights to occurring only at arraignment. We were dealing with a complaint here? Correct. Do you agree with the proposition that an indictment is clearly a formal charge, but whether a complaint counts as one depends on how it's used, rather than how it's labeled by state law? Correct, absolutely. And you think you fit within that definition? We fit within the definition because... Or that proposition rather than that definition. Well, because the complaint prompted arraignment and it prompted restrictions on the defendant's liberty. And, you know, in response to this argument, the state does not apply the standards set forth by Rothgerry to the complaint in the present case. Instead, the state ignores the proposition set forth by Rothgerry and they go on and they try to reintroduce the notion of prosecutorial involvement or prosecutorial awareness, which is a notion flatly rejected by the court in Rothgerry. Mr. Goosbury, neither party cites the United States v. West case. It's a Wisconsin Federal District Court decision that is factually very similar to this case. And the court there concluded that the defendant's Sixth Amendment right to counsel had attached. And it says the... It signals the commitment to prosecute and thus triggers an arrestee's right to counsel at that time. And it's... So it's when the prosecutor decides to prosecute that triggers the Sixth Amendment. Do you agree with that? No. I don't believe that the prosecutorial involvement... First of all, I'll stay among familiar with the West case. But the U.S. Supreme Court in Rothgerry clearly states that the prosecutor's involvement, his awareness, is not a... Not even a controlling fact. It's not a relevant fact. And they... The court in Rothgerry expressly states that it's irrelevant whether the judicial machinery is turned on by a police officer or somebody in the prosecutor's office. So although I'm unfamiliar with the West case, the notion that a prosecutor, someone with a title or the role of prosecutor, has to be involved under Rothgerry's is not a relevant fact. Could you be precise for me? The moment you think the Sixth Amendment right was triggered, the filing of the complaint, or my sense of the briefs, your argument was the issuance of the arrest warrant. At what point are you asking us to focus? Well, if I could kind of back into this. Certainly by the time of the lineup, February 26th. But more nearly, and to answer your question, I think upon the filing of the formal charge and the approval or the issuance of the arrest warrant, for example... Could we... When you say the filing of the formal charge, what do you mean? Filed at the clerk's office in... No, the complaint was filed in Cook County, in the Circuit Court of Cook County. But the charging document is what we are to focus on and not the arrest warrant that was issued by the judge. Correct, correct. And in this case, it follows that the filing of the formal charge prompted the arraignment and the restrictions on the defendant's liberty. You know, had the court rejected the complaint and denied the issue an arrest warrant, we wouldn't be here. There would have been no arrest. There would have been no lineup. Can you clarify for me? It seems to me there's some confusion either in the appellate court or in the arguments that there was a complaint filed on February 20th when the warrant was issued and then the appellate court at least alludes to a criminal complaint that was filed on February 28th. Were these different complaints? Were they filed differently? Yes. Let me start out by saying there were two different complaints filed. There was a complaint filed on February 20th and then there was a subsequent complaint sworn out by a different officer on the 28th after the lineup. In fact, I think the state had convened a grand jury on the 27th after the lineup. Sometime between the 26th and the 28th, the state filed a subsequent complaint. There may also be some confusion as to the filing date of the complaint which I hope I obviated when I supplemented the record. And that is this.  that was contained in the original record was hard to read. The date was hard to read. So what you saw was February, there was a two and you couldn't really tell with the following number. But I did supplement the record with leave of court and that complaint clearly, clearly demonstrates that it was February 20th. And that's the same date that the arrest warrant was issued? Correct. Yes. And there was another date that's really unknown. Is that the date you're talking about where the judge found probable cause to support the warrant? That was February 20th. That date is known. Yes, that was at the time. When I wrote this, it was unknown. You said there was confusion about the date. What I'm just saying is the file stamp on the February 20th complaint was not legible. That's what I mean to say. And I supplemented it with a complaint that you could clearly see the file. But the indictment was April 2nd? The indictment was April 2nd, correct. The indictment was April 2nd. And the warrant, the arrest warrant was clearly issued on February 20th. The state then argues, I guess, the second issue. And the second issue becomes, well, assuming that adversarial proceedings commenced, does the defendant have the right to have his attorney observe the witness making her identification during the lineup? And in the present case, the appellate court found that a defendant does have that right. That an attorney must be able to observe the witness during the identification process. Does it matter whether or not the state's attorney was present at the time of the lineup? Does not. Does not at all. For two reasons. Well, one, if the inquiry is whether or not it's a it's a critical stage. The U.S. Supreme Court clearly says that a lineup is a critical stage at which a defendant is entitled to an attorney at his lineup. But I think more importantly, the whole underlying basis for having an attorney present at the lineup is so the attorney could prevent unfairness in the first instance. And moreover, to allow the attorney a sufficient basis on which to conduct a cross-examination, a trial. So whether or not a state's attorney, the prosecutor, is present there    at the lineup in the first place. Could you say that the U.S. Supreme Court is not a is not a should you take that rationale further and say then the defense attorney should have the right to be present when the state's attorney is interviewing witnesses or when the police are interviewing them? No. There's something different there. There's something different. And what's different is that a lineup is considered a trial-like confrontation. And under Supreme Court precedent, Gilbert and Wade, clearly, a defendant is entitled to an attorney at his lineup. It's not the same when a prosecutor or assistant state's attorney is interviewing a witness. Counsel, can you clear up for me, when you responded to Justice Tice's question at what moment in time right to counsel attached, did you say it was when the judge found probable cause before the lineup? No. Upon the filing of the formal charge. Which? Which prompted arraignment and prompted restrictions on the defendant's liberty. You indicated earlier that the defendant was not brought before a judge in St. Clair County where he was arrested. Is the record clear on that because there seems to be some confusion, again, as to whether or not he was, and that would have been under section 109-2, I believe. I wish he was. Had the defendant been presented to a judge in St. Clair County, you know, he would have been arraigned. And then, you know, I'm not sure what argument the state would then have to deny him his right to counsel. But there is nothing in the record to suggest that he had been arraigned in St. Clair. I see my time's up. Thank you, Mr. Goldwasser. Ms. Katz? May it please the court. My name is Michelle Katz. I'm a Cook County Assistant State's Attorney appearing on behalf of the people. In this case, after agreeing to go to the police department to meet with Area 2 detectives, upon being contacted by them, their intention being to conduct a lineup on the 13th of January, the defendant instead decided to hope that the truth would come out and he finally fled to East St. Louis. And upon fleeing to East St. Louis, the detectives continued to look for him, were unable to do so, and on the 20th of February, after receiving information from a U.S. Marshal as to his whereabouts, went and obtained an unchallenged arrest warrant on the basis of having probable cause. It was at that point that that arrest warrant, the existence was conveyed back to the authorities and the defendant was taken into custody and on the 25th, he was transported in the evening to the Chicago Police Department and less than 24 hours later, the Chicago Police Department had the lineup that they had attempted to have a month earlier, at which point, defense counsel, counsel of choice, the same counsel who represented the defendant at his trial, was present at the police department, asked to be, quote, present, unquote, was permitted to be in the room where the defendant stood alongside the other individuals who were in that lineup and was subsequently told of the fact that two of the witnesses, the only two who viewed the lineup, had made an identification. Subsequent to this, a trial commenced. What did not commence was the filing or the litigation of a pretrial motion to cross arrest and suppress the lineup identifications on which the defendant would have borne the burden of proof. What also did not happen in this case is that the defense attorney never challenged the admissibility of the lineup procedure in the defendant's post-trial motion. Again, there is no reference to the propriety of the lineup procedure, to any delay that occurred from the transporting of the defendant from St. Clair County to Chicago, to the admissibility of the identifications. In light of this, in light of the established precedent of this court, forfeiture principles dictate that this court not reach the merits of the defendant's substantive claims with respect to when the right of counsel attaches, or the propriety of a particular procedure that was engaged in. And in terms of arguing forfeiture, not to belabor the point, but this is an unusual case because not only is there not any sort of objection to the admissibility of these lineup identifications, which would normally constitute a simple forfeiture, but you have in this record evidence of an affirmative case, and the defense attorney, and I've cited this in my brief, discusses his decision, and there is no claim of ineffective assistance of counsel that's ever been waged in this case, his strategic decision not to attack the admissibility of the lineup identifications. And if you look at the defense strategy in this case, it hinged on utilizing the lineup identifications. And to be clear here, while two witnesses identified the  one of those identifications was not offered in evidence by the people but by the defendant in his case in chief. He calls a witness who made one of those identifications. The state did not utilize that evidence, but with respect to the other identification, this is why the defendant chose not to test the admissibility because his theory of defense was very simple and straightforward. And it was this, that upon the commission of this offense, Martina Brewer, who is the victim's girlfriend, who was present at the scene, set into motion a course of events that resulted in the identification of the defendant when she named him as being the perpetrator. Because the theory being, first of all, that she lied and you've got her substantively admitted testimony that contradicts that, but that when she identified the defendant and the defendant's photo was put in a photo array with other individuals, that because of his physical ailment, that essentially nobody else on the planet looks like this defendant and that the identification resulted from that distinctive face that he admits and that the trial judge remarked on that nobody else shares. And so based on the particular facts of this case, they argue even more strongly for this court not to reach the issues, the substance of the issues that are raised. But if this court, and we urge that you don't, but if you do, bypass application of those forfeiture principles and we turn to the question of when the Sixth Amendment Right to Counsel attaches, Rothgerry does not support the defendant's argument because Rothgerry, we do agree as to one thing, Rothgerry did not change anything. Rothgerry is essentially the court's response, the United States Supreme Court's response to Texas's act of bypassing the rules. And I agree that there are five things that constitute the initiation of adversarial judicial criminal proceedings, but the wording is not formal complaint, which is what the defendant just stood before you and said. It's formal charge. And Rothgerry is very clear and, as your honors have noted, specifically states that its holding is narrow and that what it addresses is a defendant who appears before a judge, is apprised of the charges against him, and then there is action taken that affects, restraints are placed on his liberty, a bond is set. The case can't be separated from the fact of the defendant's appearance in court. And the case comes under the arraignment portion of what constitutes a formal charge. And essentially, I think the best case, even though it's not binding on this court, it comes from outside of Illinois, but it really very clearly tackles this question of when does the right attach, is Boskic, the First Circuit case, which I cite in my brief, which talks about what is this complaint for preliminary individuals into court and charging them with an offense but the prosecutor would not be present. And Texas urged that it wasn't really an arraignment because it required prosecutorial involvement and the United States Supreme Court said no, I agree, the rules are the rules, an arraignment is an arraignment. If you are being brought before a magistrate and something is being done and you are being informed of a charge, that constitutes the initiation of formal judicial proceedings. And when you look at the five ways in which this can happen, they require one of two things, either prosecutorial involvement because when you are talking about an indictment, you are not talking about, I agree, a defendant coming before a judge and  talking about an arraignment because the prosecution is acting to formally charge you. When you appear in front of a judge and there is an arraignment that takes place, that is a formal charge and the court rejected the notion that the prosecution in Texas could stand by and basically pretend that they didn't know what was happening or say that we are not a participant, therefore it doesn't count. That is all that Rothgerry did. But there is something very important in Rothgerry that needs to be discussed, which is the fact that Rothgerry says, look, 43 states are doing this the right way. There are some renegade states that are not doing it the right way. To my mind, it is sort of analogous to Siebert and a practice that was bypassing the rule in Miranda. That is sort of what was happening here. But what it says is 43 states get it right. And guess what? Illinois is specifically stated as one of the states that is doing things in compliance and that is ensuring that at the time of the defendant's first appearance in court, counsel is appointed. And that is precisely what happens in this case. Ms. Katz, you are saying that judicial machinery starts in a Sixth Amendment that attaches at the arraignment. Yes. Well, if you can say that, then don't you believe that the prosecution has been committed to prosecute the defendant? The judicial process already started. So why schedule an arraignment if it hadn't started before? Why schedule an arraignment? I'm saying that if you say the first time the right to counsel attaches is the arraignment, I'm saying that what about the judicial machinery starting before? Don't you believe that that started long before that? I don't, Your Honor, and let me explain to you why. Because Rothgerry talks about 50, 60 years of precedent that came before it.  its decision in Govia. Now, in the language of Rothgerry, it says, this is not like Govia, where we were being asked to extend the timeline backwards in time for the attachment of the right. The court says, this is where we're being asked to suspend it until the prosecutor is involved. Now, if you look at Govia, Govia is a case where individuals were in federal penitentiary and a murder was committed. And for a period of 18 or 19 months, they were held in individual isolation, segregated from the rest of the population while the FBI was investigating them. Now, Govia says that during the pregnancy of that investigation, the Sixth Amendment right does not attach. And when the question was raised, well, what about this delay? Doesn't this delay somehow mean that there should have been a de facto attachment of the right? The court says, no, you can't use, you can't grasp hold of the Sixth Amendment to deal with something that has an entirely different constitutional protection through process. But the  hadn't committed itself to making the charges at that time in Govia. Isn't that right? That's right. They were still investigating. But here it's a little different. The prosecutor had already committed to prosecuting the defendant. Your Honor, I would respectfully disagree with your assessment that or the suggestion that the prosecution had committed itself. There is an entire body of case law that talks about the ability of the State to, for there to be an investigative delay. The State is not required just because there's a finding of probable cause. The United States Supreme Court has said this, to go ahead and file charges, formal charges against a defendant. The defendant saying that this complaint somehow prompts arraignment, turned to the complaint itself, the complaint didn't prompt anything other than the issuance of an arrest warrant. The complaint has no   case. Can you help us with this? This is something I'm really concerned about. I'm concerned about how we're using the expression complaint. Is this a complaint filed by the police asking the court to issue an arrest warrant or is this a complaint for a preliminary hearing filed by the State's Attorney's Office? There's two complaints. They both are entitled complaint for preliminary hearing. Illinois in order to secure an arrest warrant requires a complaint, not a complaint for preliminary hearing, a complaint that that be filed by a police officer. In this case, and it is unclear, if you look  complaint, the complaint was filed after the point in time at which the lineups were conducted. There were two complaints. The first complaint was presented to the court the same day that the arrest warrant was presented and signed. And who did someone sign it? Is there an affidavit? Is it by the police officer? Is there a signature on it? There is the name of the defendant, the charge that he's accused of, and there's just an indication that it's stamped, it's received,  signed off on by a clerk of the circuit court. The warrant is the thing on which the bond is set, on which the judge's signature appears. The purpose of the complaint, whether it has the language on their complaint for preliminary hearing or not, the purpose of the complaint is to obtain the warrant. In this way, the case is no different. This is why I'm bringing you back again to the court's decision in Boskick. It's the same procedure that's utilized. Now... When the second complaint was filed, the 25th maybe? Yes. Is that signed by the state's attorney? That is not. That is signed by the other detective who is on this case, but that one, which is almost identical, has a date and a place where the defendant is to appear at the top of it. If you look at it, there's a line that says where the court appearance is going to be. Here's my question. If the first complaint, which, again, it's our position, just triggered the issuance of an arrest warrant, prompted the defendant's appearance in court, why would we file a second one? Because it doesn't do that. It's the second complaint that was filed, the one that the appellate court referenced in its opinion that actually is the one that's in front of the judge when the defendant is arraigned. And why? Is it just a matter of procedure? If the wording is exactly the same, it's presented the same way, it's signed by the Chicago Police Department, two different detectives, why would we look at them and analyze them differently if the language is the same and presented the same? Because the first one, because they have no legal significance in terms of the right to arrest.         one,  fourth one, the fifth one, the sixth one, the seventh one, the eighth one, the ninth one, and you're saying that the right to counsel doesn't attach until he actually shows up in court? Yes. And answer to the charges on that same day? Yes. Because it's our position that's what Rothgary says and if you look at the United States Supreme Court case law as a whole, it has refused to extend that  counsel. Otherwise, you end up with a very strange situation where the police in an effort to fully comply with the Fourth Amendment go and obtain a warrant, get a finding of probable cause, and somehow that is now going to automatically trigger application of the Sixth Amendment where a   right to not be attached. The right doesn't attach. And that would be a very peculiar and anomalous situation. And if court appearance is required, can the state just delay bringing the defendant to arraignment to prevent his rights from attaching? This is the next thing I want to talk about. I'm glad you asked me that question. Here's the thing. Several questions have been asked about what happened. Why was there the five-day delay? Why did it take that long to get the defendant here? The appellate court suggested that we should have provided an answer. I don't know the answer to that question because the defendant never made an issue of this below, so there was no litigation of it. Was there a waiver, Justice Freeman? We don't know is the answer. There can't be a no as in an absolute affirmative answer to the question because the record is simply silent as to what transpired. The only thing that we agree on with respect to this is that he was not brought to a judge. Clearly he was not brought to a court because if he had been brought to a court, it would be an entirely different case. But there was no challenge to the passage of those five days. Now, again, we're in a situation where we have a warrant, so McLaughlin and Gerstein and those rules don't come into play. We have a statute that says without unnecessary delay. I don't know whether there was a medical issue, whether there was a transportation issue because you're dealing with several agencies that caused that delay. I don't know if the defendant did not want to appear. He wanted his lawyer. Clearly his lawyer was waiting for him at the point at which he arrived in Chicago and stood by him while the lineup was engaged in. And clearly the police believed from the onset of this thing that they needed to conduct an investigation. That in itself could be deemed to be an unnecessary delay that was transpiring at the point at which the investigation was still ongoing. So we don't have a record that in any way suggests, and I think the appellate court said this, that there was any wrongdoing on the part of the authorities. Clearly his attorney is at the station, so they're trying to cooperate. They're cooperating even beyond what the defendant is entitled to under our argument if the right to counsel didn't attach. But he's got counsel there with him. Yes, Your Honor. I'm sorry. Justice Garmon, did she answer your question? Yes. Did you have a question, Justice? I did want to follow up on Justice Garmon's question. Can you say that it's the judicial machinery that actually is the time and frame when the Sixth Amendment attaches as opposed to the prosecutor being present in court? The judicial machinery that signals the commitment to judicial machinery occurs in one of two ways. Either appearance in front of a judge. What about the warrant? The warrant has been held. A warrant standing alone has never been held to trigger application of the Sixth Amendment right to counsel. Never. Probable cause to arrest? Absolutely not. Well, the West case that I suggested says otherwise. Your Honor, I apologize for not being familiar with the West case. I would need to look at it. I'd be very happy to respond to that in a motion after this argument is concluded. The only thing I would wonder about the West case, much as in the case that my opposition relies on the Mississippi case, is that I don't know whether that case rested just on Federal Sixth Amendment principles or also if it was tied in to the particular Constitution of that state or their own procedures. Because that was the case in the Jumper situation. Yes, Your Honor. I was on the West case, but it's been covered. Okay. Thank you, and I'd ask that you affirm the defendant's conviction. Thanks for your time. Thank you. Mr. Goldwasser. I still have not heard the State explain why the complaint in this case does not constitute a formal charge under Rothkerry. What I did hear was that the State continued to try to reintroduce this notion of prosecutorial involvement. Continuing, they cite the Boska case, which clearly relied on prosecutorial involvement. I think it's instructive to consider the court apportion in Rothkerry, which they did not   opportunity to do. I'll quote a law review article. It says it would defy common sense to say that a criminal prosecution is not commenced against a defendant who perhaps incarcerated and unable to afford it. The first complaint prompted an arrest warrant and not an arraignment. And earlier I think I asked you if it's what the complaint is utilized for that is operative in this case. And I thought you agreed with that proposition. The complaint, they filed the complaint to charge the defendant. The judge then took action on the complaint, issued an arrest warrant requiring the defendant, directing the state to lock the defendant up and said bail. I don't know if that answers your question, but that's what the complaint does. The motivation, the purpose behind why they filed the complaint, I'm not sure I followed the state there. But I don't know if it's purpose as much as what the complaint is used for. She made the point didn't she that there wouldn't be a need for a second complaint. How do you address that? The second complaint, I guess, is set a date for a preliminary examination. That is quite apart from a preliminary hearing. That's quite apart from the issue of an arraignment. A defendant is required to be arraigned in court without undue delay. That has nothing to do with a preliminary examination or a preliminary hearing. That's a separate section of the statute that she's arrested in without undue or unnecessary delay. So the reason or the motivation the state filed the second complaint, I'm not sure, perhaps they wanted a date for a preliminary examination, but clearly the complaint in this case resulted in the defendant's arrest, the defendant's arrest,  undue or unnecessary delay. If the defendant had been arrested without a warrant, we wouldn't be looking at the first complaint, would we? If he had been arrested without a warrant, just upon a determination by the police that he had committed a crime,  be looking at the first complaint. Yeah, but at that point, the arraignment would, the arraignment itself, being presented in court even without a charging document being filed, would signal the onset of adversary judicial proceedings. I just want to make a quick comment on the Gouveia case. In the Gouveia case, no complaint was filed in Gouveia. So there is no formal charge to, you know, to make an analogy from the Gouveia case to our case. They're completely opposite. The state made an interesting comment. They said, had the defendant been brought before the court, he would have, this would be a totally different case. Well, the problem is he wasn't presented before court for eight days, having nothing to do with anything he did. The state is required to present a defendant upon arrest without undue delay. It failed to do that. Instead, what it did is, after six days, still without having presented the defendant in court, the   decision and to make a lineup. How do you address counsel that this goes beyond forfeiture and maybe into waiver as a result of the strategy of defense counsel utilizing the lineup? The trial counsel in the case made comments during the there was a motion for a finding of not guilty following the state's case. And in that, essentially what the trial counsel said was the defendant has such a distinctive look, I don't know how you could have constructed a lineup where you have people who look similarly enough to him to render the lineup anything but suggestive. An argument present on improper suggestion is a 14th and a 5th amendment argument. A due process argument. The argument we're making is a different argument. We're arguing that the defendant's 6th amendment right required an attorney to be present and able to view the witness making her identification. To circle back to the idea that the defendant introduced this evidence, I'm not making the argument based upon Keith Slaughter's identification. My argument is based solely on the illegal improper introduction of evidence of the lineup identification of Shirley Collier. The state relied heavily on that evidence. The state introduced that evidence through Ms. Collier's testimony, through Detective Fassil's testimony. It introduced a picture of the lineup. Clearly the state thought her lineup identification had significant import in the case and that's why they relied on it so heavily. The idea of I'd like to touch upon whether or not this was a close case. He had seven eyewitnesses, two ID'd the defendant, one had recanted an earlier identification, one stated that he couldn't ID the defendant, and three stated that it wasn't the defendant. One of the I think most telling factors here is out of the two witnesses who identified the defendant, Sean Davis and Sherry Collier, one testified that the shooter had a beard, that was Mr. Davis. Sherry Collier testified that the shooter didn't have a beard. This is clearly, clearly a close case. The Supreme Court in Wade remarked about the vagaries of eyewitness testimony, and a question, and it quoted Justice Frankfurter for a question, what is the value of the eyewitness testimony, especially that of a stranger. Ms. Collier testified that she did not know the defendant, she had never seen him before, she clearly was a stranger. The trial court relied heavily on her testimony, both upon its denial of the defendant's motion for a not guilty finding after the state's  In this case, she remarked upon the credibility of Ms. Collier's testimony, and again upon the denial of the defendant's post-trial motion. The trial court again commented upon the credibility of Ms. Collier's testimony. Well, in this case, the trial   Ms. Collier's testimony, and her identification. Unless there's any further questions, I'll conclude by respectfully asking this court to reverse the defendant's conviction, and award him a new trial. Thank you, Mr. Goldwasser. Case number 109689,